Edward S. DICKENSON, Appellant,

v.

Colonel James W. DAVIS, Commandant, United States Disciplinary Barracks, Fort Leavenworth, Kansas, Appellee.

No. 5521.

United States Court of Appeals Tenth Circuit.

May 16, 1957.

Rehearing Denied June 5, 1957.

**318**

Homer Davis, Leavenworth, Kan. (Guy Emery, Washington, D. C., on the brief), for appellant.

Cecil L. Forinash, Lieutenant Colonel, J.A.G.C., Washington, D. C. (William C. Farmer, U. S. Atty., Topeka, Kan., Milton P. Beach, Asst. U. S. Atty., Kansas City, Kan., and Peter S. Wondolowski, Lieutenant Colonel, J.A.G.C., Washington, D. C., on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appeal is taken from the order of the United States District Court for the District of Kansas quashing a writ of habeas corpus after full hearing. Appellant is detained by the Commandant of the United States Disciplinary Barracks at Fort Leavenworth, Kansas, after conviction by a court martial of violation of Articles 104 and 105, Uniform Code of Military Justice (50 U.S. C.A. 698, 699*). The offenses consisted of unlawful communication with the enemy and informing on other prisoners of war while appellant was held by the Chinese Communists as a prisoner of war in Korea. Appellant's conviction has been reviewed and affirmed by the United States Court of Military Appeals. United States v. Dickenson, 6 U.S.C.M.A. 438, 6 C.M.R. 154. In support of his petition for habeas corpus he now urges that (a) the military lacked jurisdiction of his person at the time he was charged and tried for the offenses, (b) Article 104 of the Uniform Code of Military Justice is unconstitutional, and (c) he was denied due process in the conduct of his trial before the military. Each of appellant's contentions was considered and rejected by the trial court in a careful and comprehensive opinion, 143 F.Supp. 421, wherein Dickenson's military history is detailed and the arguments of counsel fully set forth. As a consequence, we need only summarize.

Dickenson enlisted in the Army on March 31, 1950, for a term of three years and would have been eligible for discharge in April, 1953. At such time he was a prisoner of war and had been for over two years. After initially refusing repatriation during "Operation Big Switch", Dickenson appeared at a United Nations camp on October 21, 1953, and requested return to the United States. On November 21, 1953, he was returned to this country, granted various periods of leave until January 21, 1954, and then returned to duty. This date coincides with the expiration of the period provided by the truce agreement between Communist China and the United States during which prisoners of war could determine which country commanded their loyalties. Charges were preferred against Dickenson on January 22.

Appellant recognizes that he was subject to full military control up to the

* Now 10 U.S.C.A. §§ 904, 905.

date of return to continental United States and for a sufficient time thereafter for the Army to routinely effectuate a discharge. He contends however that the lapse of sixty days during which his requested discharge was not granted and no charges were preferred constitutes an unreasonable length of time occasioned by the Army for reasons other than the benefit of appellant; that his acceptance of leave and various pay allowances during the period was routine upon his part and did not indicate acquiescence to the procedure; that at some date prior to January 22, 1954, he regained civilian status as a matter of law and was no longer subject to military control for the purpose of court martial.

■ Appellant's argument in this regard, promulgated as it is against a sympathetic background, is deemed by us to be ingenious but unsound. Service in the military, whether by enlistment or otherwise, creates a status which is not and cannot be severed by breach of contract unfortified by a proper authoritative action. U. S. v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; see also Morrissey v. Perry, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644; U. S. v. Williams, 302 U.S. 46, 58 S.Ct. 81, 82 L.Ed. 39. At the time appellant was accused he had neither been discharged in accordance with 10 U.S.C.A. § 1580 (transferred to 652a for future codification)[1] nor had his military status been severed under other authority or by judicial action. He was a soldier, subject to the rules, discipline and jurisdiction of the Army and squarely within the provisions of Article 2 of the Uniform Code of Military Justice, 50 U.S.C.A. § 552(1)** which describes as subject:

> "All persons belonging to a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; * * *."

Nothing in U. S. ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L. Ed. 8, impels a different conclusion for in that case the accused had received his discharge and become a civilian prior to the institution of military charges. Likewise, the problem which may lurk in the interpretation of Article 3 as to jurisdiction over a serviceman who is discharged, re-enlists and then is tried for an offense committed within his first term, has no bearing upon this case. Cf. U. S. ex rel. Hirshberg v. Cooke, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 and U. S. v. Gallagher, 7 U.S.C.M.A. 506, 22 C.M. R. 296. In the present case, the status of the accused as a soldier was unbroken and the charge against him was based upon an offense committed by him during his term of enlistment. See U. S. ex rel. Parsley v. Moses, D.C.N.J., 138 F.Supp. 799; Pinkney v. Hillenkoetter, D.C.N.Y., 132 F.Supp. 625.

*The Constitutionality of Article 104*

The petitioner was convicted of a violation of Article 104 of the Uniform Code of Military Justice, 50 U.S.C.A. § 698, and also Article 105. Article 104, which he contends is unconsitutional because by its terms it applies to persons other than those subject to the Military Code under Article 2, reads:

> "Any person who—
>
> "(1) aids, or attempts to aid, the enemy with arms, ammunition, supplies, money, or other thing; or
>
> "(2) without proper authority, knowingly harbors or protects or gives intelligence to, or communicates or corresponds with or holds any intercourse with the enemy, either directly or indirectly;
>
> shall suffer death or such other punishment as a court-martial or military commission may direct."

■ Articles 104 and 106 [†] are the only two articles of the Uniform Code of

---

1. "No enlisted man, lawfully inducted into the military service of the United States, shall be discharged from said service without a certificate of discharge

* * *." [Now 10 U.S.C.A. §§ 3811, 8811.]

** Now 10 U.S.C.A. § 802.

† Now 10 U.S.C.A. § 906.

Military Justice which apply by their terms to "all persons" regardless of the categories of persons subject to the Code by Article 2. Articles 104 and 106 were formerly the 81st and 82nd Articles of War and, although the question of constitutionality of those articles as applied to a citizen not in uniform was presented to the Supreme Court in Ex parte Quirin, 317 U.S. 1, 46, 63 S.Ct. 2, 87 L.Ed. 3, the Court declined to pass upon the contention for the same reason which we now reject it.

■ Appellant was convicted under Article 105, as well as 104, and Article 105, 50 U.S.C.A. § 699, is limited to "any person subject to this chapter" and concerns misconduct of a prisoner in the hands of the enemy during war. His conviction under this Article is sustained without resort to Article 104. The writ of habeas corpus may not be used in the federal courts as a means of securing the judicial determination of a question which, even if determined in the prisoner's favor, could not result in his release, McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

*Denial of Due Process*

Finally, petitioner claims that his constitutional right to a full and fair hearing was violated by the refusal of the prosecution to relase statements made by other ex-prisoners of war at Camp No. 5, Pyoktong, Korea, the camp in which the accused was imprisoned. These statements, 500 documents which had been classified "Confidential, Security Information", were obtained by Security Officers at the time of the repatriation of the prisoners. Ninety-five of these documents were permitted to be declassified by the investigating officer for the purposes of the trial, but the remainder apparently were not available for use by either the prosecution or the defense. However, a prosecution witness Corporal Thomas R. Carrick admitted that his statement for trial was inconsistent with information he had previously given to the Army. Defense counsel requested, for the second time, that Carrick's file, at least, be made available to them, but this request was denied.

■ In the habeas corpus proceeding it was the view of the trial court that the refusal to release these documents was a question of error reviewable only within the military courts system and could not be raised in the federal courts as long as the military tribunals had granted the petitioner the right to present his contentions. On the authority of Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508, we must agree with the trial court. Although it is said that the Burns decision enlarged the scope of review by the federal courts beyond the mere inquiry into jurisdiction of the court martial as defined by the Grimley decision, supra, military law is the jurisprudence which must determine the balance between duty, discipline, and national interests in supervising the trials of military personnel. For this reason, the courts are separate and a civil court has only the power to determine on habeas corpus whether or not the military court refused to consider the contention here raised, and only if it has so refused to determine whether constitutional guarantees have been afforded the accused. See Easley v. Hunter, 10 Cir., 209 F.2d 483; Suttles v. Davis, 10 Cir., 215 F.2d 760.

■ Appellant has been permitted to pursue his remedies of review from the court martial to the Board of Review to the Court of Military Appeals and cannot seek in the civilian courts a redetermination of the decisions made final and binding on the courts of the United States by Article 76 of the Uniform Code of Military Justice, 50 U.S.C.A. § 663.††

The trial court's judgment discharging the Writ of Habeas Corpus is affirmed.

†† Now 10 U.S.C.A. § 876.