FILED
United States Court of Appeals
Tenth Circuit

October 30, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SOLOMON J. TEMPLAR, formerly
known as Joseph L. Thomas,

      Petitioner - Appellant,

v.

COLONEL HARRISON,
Commandant,

      Respondent - Appellee.

No. 08-3094
(D.C. No. 5:05-CV-03009-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

      Solomon J. Templar, previously known as Joseph L. Thomas, appeals

pro se from the denial of his 28 U.S.C. § 2241 habeas petition. He was convicted

and sentenced to death by a general court-martial for the premeditated murder of

his wife, but his sentence was overturned by the Court of Appeals for the Armed

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Forces, *see United States v. Thomas*, 46 M.J. 311 (C.A.A.F. 1997), and he was resentenced to life in prison with a dishonorable discharge. While incarcerated at Fort Leavenworth, Kansas, Mr. Templar filed his § 2241 petition in the district court. Applying our precedent, however, the district court denied relief because the military courts had accorded full and fair consideration to the issues he raised.

In this appeal, Mr. Templar maintains he is entitled to relief due to three errors stemming from instructions given to the members of the court-martial. He argues that the military judge (1) misinstructed the members that they could reconsider non-unanimous findings of guilt; (2) misinstructed the members that they could reconsider non-unanimous findings of aggravating factors necessary to authorize a death sentence; and (3) misinstructed the members that a two-thirds vote was required to impose a life sentence, rather than the actual three-fourths vote necessary to do so.[1]

The government responds that all three issues were given full and fair consideration by the military courts, and thus the petition was correctly denied. The government adds, however, that Mr. Templar's second and third claims are moot because his original sentence was set aside. According to the government, notwithstanding any instructional errors that may have occurred at the original

---

[1] Mr. Templar also raises several additional claims for the first time in his reply brief, but because "[t]his court does not ordinarily review issues raised for the first time in a reply brief," *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), we deem those claims waived.

sentencing hearing, the latter two claims are moot because they relate to issues that did not arise at resentencing.

We begin with Mr. Templar's first claim. "We review the district court's denial of habeas relief de novo," *Fricke v. Sec'y of Navy*, 509 F.3d 1287, 1289 (10th Cir. 2007), but our review of court-martial proceedings is "limited generally to jurisdictional issues and to determination of whether the military gave [full and] fair consideration to each of the petitioner's constitutional claims," *id.* at 1290 (quotation and emphasis omitted); *see also Burns v. Wilson*, 346 U.S. 137, 142 (1953) (extending the scope of federal civil court review over court-martial proceedings where the military courts had not "dealt fully and fairly" with a petitioner's claims). An issue receives full and fair consideration if it has been briefed and argued, even if the military court summarily disposes of the matter. *See Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986).[2]

Mr. Templar repeats his contention raised in the military courts that the judge misinstructed the members that they could reconsider a non-unanimous

---

[2]     Some prior decisions from this court elaborate four factors to be considered before granting habeas review of military cases. *See, e.g., Roberts v. Callahan*, 321 F.3d 994, 996 (10th Cir. 2003) ("1. The asserted error must be of substantial constitutional dimension. 2. The issue must be one of law rather than of disputed fact already determined by the military tribunals. 3. Military considerations may warrant different treatment of constitutional claims. 4. The military courts must give adequate consideration to the issues involved or apply proper legal standards." (quotation and ellipses omitted)). Here, the dispute concerns whether Mr. Templar's claim received full and fair consideration, and thus our analysis focuses on that inquiry.

finding of guilt. But after great scrutiny, the military appellate courts rejected this claim. *See United States v. Thomas*, 39 M.J. 626 (N-M.C.M.R. 1993), *aff'd*, 43 M.J. 550, 581 (N-M. Ct. Crim. App. 1995), *aff'd in part and rev'd in part on other grounds*, 46 M.J. 311 (C.A.A.F. 1997); *see also United States v. Thomas*, 60 M.J. 521, 535-36 (N-M.C.M.R. 2004) (declining to consider claim after remand but noting that relief would be inappropriate). Because the claim has already received full and fair consideration, we may not now grant the writ "simply to re-evaluate the evidence." *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993) (quotation omitted). The district court was therefore correct to deny relief on Mr. Templar's first claim.

As for Mr. Templar's second and third claims, we take up the mootness question under a de novo standard of review. *See R.M. Inv. Co. v. United States Forest Serv.*, 511 F.3d 1103, 1107 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 2484 (2008). The issue of mootness is a threshold consideration "because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1123 (10th Cir. 2008) (quotation omitted). The case or controversy requirement ensures "that, throughout the litigation, the [complaining party] must have suffered or be threatened with, an actual injury traceable to the [opposing party] and likely to be redressed by a favorable judicial decision." *Id.* (quotation omitted).

Mr. Templar predicates his second and third claims on the instructions and attendant voting methods used to determine his original sentence. Pursuant to Rule for Courts-Martial (RCM) 1004(b)(4)(A), members cannot authorize a sentence of death unless they find at least one aggravating factor. An aggravating factor is found when the members vote by secret written ballot and unanimously "concur in a finding of the existence of at least one such aggravating factor." RCM 1004(b)(7). If the members ultimately choose to impose a sentence of confinement for life, they must do so by a three-fourths vote. RCM 1006(d)(4)(B).

Mr. Templar contends in his second claim that the military judge wrongly instructed the members that if they did not unanimously agree on an aggravating factor, and there was a request to reconsider their votes, the members could recast their votes to reach a unanimous decision. Mr. Templar asserts that without mandating that members vote only once by secret written ballot, this instruction permitted members to cast multiple oral votes in violation of RCM 1004(b)(7), which potentially allowed senior ranking members to influence the votes of junior members. In his third claim, Mr. Templar contends that the military judge misinstructed the members that only a two-thirds vote was necessary to impose a life sentence, rather than the three-fourths vote required by RCM 1006(d)(4)(B).

We agree that these claims are moot, although for reasons somewhat different than those proffered by the government. The asserted errors potentially

-5-

prejudiced Mr. Templar in two ways, the first of which is obvious: permitting the members to cast multiple oral votes could have facilitated the imposition of the death penalty, since senior ranking members could have pressured junior members to acquiesce in the punishment of death. For our purposes, any prejudice of this sort was clearly mooted when the C.A.A.F. set aside Mr. Templar's death sentence and ordered a new hearing. The other error – the military judge's understatement of the majority of members needed to impose a life sentence – could not have facilitated the death penalty because, as the Navy-Marine Corps Court of Criminal Appeals recognized, the instruction only made it easier for the members to sentence him to life, which we know they did not.

The second way Mr. Templar could have been prejudiced is less obvious and requires an understanding of the sentencing process in capital military cases. Under the Uniform Code of Military Justice, the offense for which Mr. Templar was convicted, premeditated murder, carries a mandatory sentence of either life in prison or death. *See* 10 U.S.C. § 918(1). But if the members cannot agree on an appropriate sentence, that is, if they do not unanimously decide to impose death, or do not agree to impose life in prison by a three-fourths majority, the military judge may declare a mistrial on the sentence and return the case to the convening authority, who may then "order a rehearing on sentence only or order that a sentence of no punishment be imposed." RCM 1006(d)(6); *see also Dodson v. Zelez*, 917 F.2d 1250, 1260-61 (10th Cir. 1990) (recognizing that RCM 1006(d)(6)

-6-

authorizes a sentence of no punishment if the required votes are not attained). At this point, the sentencing alternatives following a mistrial are potentially much more favorable to the defendant, and consequently, any error that makes it easier for the members to agree on a sentence prejudices the defendant by preempting the potential for a more lenient sentence. The prejudice stemming from this lost opportunity for leniency can be found in both of Mr. Templar's claims: multiple votes could have facilitated the members' agreement on death, while the judge's erroneous instruction could have facilitated their agreement on life.

In reality, however, neither claim is redressible because after his sentence was overturned, Mr. Templar entered into a pre-sentencing agreement with the convening authority to eliminate his exposure to the death penalty. *See* ROA, Vol. 2 at 50-53. And under the terms of that agreement, he affirmatively elected to be resentenced by a military judge, which effectively waived the possibility of a mistrial and the potentially favorable sentence that could ensue. Put differently, after regaining the opportunity for a more lenient sentence if there were a mistrial, Mr. Templar *voluntarily relinquished* it in order to secure the certainty of a life sentence. Therefore, even if we were to hold that his first sentencing proceeding involved error, we could not afford relief by ordering a potential benefit that he affirmatively waived. Thus, the claims are moot.[3]

---

[3] The government argues in the alternative that these claims received full and fair consideration in the military courts. This may be a valid position, but given

(continued...)

The judgment of the district court is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge

[3](...continued)
our disposition, we need not address the argument.

-8-